WILLIAM C. N. SWIFT *vs.* UNION MUTUAL MARINE INSURANCE COMPANY.

Bristol.   Oct. 25, 1876. — June 29, 1877.   LORD & SOULE, JJ., absent.

In an action on a policy of insurance against perils of the sea " and all other losses and misfortunes, which have or shall come to the damage of " the vessel insured, there was evidence that while the vessel, a deep, sharp vessel, drawing nineteen feet of water, was whaling in the Arctic Ocean, her cutwater was injured by striking against floating ice, causing her to leak and rendering repairs necessary; that, while cruising in the Arctic Ocean, she withstood heavy weather and other perils, and was perfectly tight until the injury to her cutwater, which occurred during a heavy gale; that after that there was heavy weather, which did not affect her; that on her arrival at a port she was examined, to see if her stem could be repaired without employing ship carpenters, and no unsoundness, rot or decay was discovered, and her master thought her to be in good order, sound, and in all respects seaworthy; that it was found that she could not be properly repaired while afloat, and, in order to put her on a gridiron, which was the only place where she could be repaired, it became necessary to beach her to find the depth of her keel and the shape of her bottom; that, when she was put on the beach, she heeled over at an angle greater than forty degrees; and, when the tide left, was badly strained, her planks started, some of her timbers gave way, and she became a total wreck. It was admitted that the vessel was seaworthy when she began her voyage; that after the disaster she was incapable of repair; and that the master acted with prudence in continuing the voyage after the injury from the ice, and in what he did in port. *Held*, that it was competent for the jury to find that the loss occurred from a peril insured against, and not from any inherent weakness in the vessel.

At the trial of an action of marine insurance, the issue was whether the vessel in-
sured was lost by a peril insured against or by inherent weakness. The plaintiff
called a witness to prove that the vessel was seaworthy when she left port, and
waived the examination on the defendant's admitting her seaworthiness. *Held*,
that the defendant could not ask the witness, on cross-examination, how old the
vessel was.

CONTRACT on a policy of insurance on the bark Trident and
outfits, "wherever she may go on a whaling voyage," from Sep-
tember 5, 1871, to September 5, 1875, against perils of the sea
" and all other losses and misfortunes, which have or shall come
to the damage of the said " bark. The vessel was valued at
$15,000, and the outfits at $29,000.

At the trial in this court, before *Colt*, J., it appeared that the
vessel sailed from New Bedford on September 5, 1871; that,
while engaged in whaling in the Arctic Océan, her cutwater was
injured by coming in contact with floating ice; that afterwards
the vessel went to Panama, where she was lost with her outfits
on February 2, 1873.

To prove that the loss was within the terms of the policy, the
plaintiff put in certain evidence, the nature of which appears in
the opinion.

The plaintiff also called, as a witness, a ship-carpenter, and
proposed to show by him the condition of the ship as to her
soundness and strength when she sailed from New Bedford. The
defendant objected, and the judge intimated that such evidence
was unnecessary, if the defendant admitted the seaworthiness of
the ship when she started on the voyage, and the defendant then
admitted it. The defendant asked this witness, on cross-exam-
ination, the age of the ship, and stated that it was proposed to
show that she was upwards of fifty years of age. The plain-
tiff objected, unless he was permitted to go into the whole ques-
tion of the condition of the ship, which he declared his readiness
to do; and offered to show that the ship had been rebuilt in
1854, and that she was stout and staunch when she sailed in 1871.
The defendant offered no evidence of the condition of the ship,
except the cross-examination concerning her age. The judge
excluded the question.

The judge directed the jury to return a verdict for the plain-
tiff, and reported the case for the consideration of the full court.
If upon the evidence the jury were justified in finding the ver-

dict for the plaintiff, judgment was to be entered thereon; otherwise, the case was to stand for trial, or judgment entered for the defendant. If the verdict was sustained, an assessor was to be appointed to determine the amount thereof, allowing salvage of wreck and outfits, as the same should appear.

*J. C. Dodge & H. W. Swift*, (*G. Marston & C. W. Clifford* with them,) for the plaintiff.

*T. M. Stetson*, (*F. B. Greene* with him,) for the defendant.

ENDICOTT, J. The principal question to be decided is, whether, upon the evidence reported, the jury would be justified in finding a verdict for the plaintiff on the ground that there was a total loss of the ship by a peril insured against.

While cruising for whales in the Arctic Ocean, at the close of the previous season, the cutwater of the ship was injured by striking against floating ice; this caused her to leak, and rendered it necessary to repair her. On her arrival at Panama it was found, upon examination, that she could not be properly repaired while afloat, and in order to put her safely on the gridiron, which was the only place where she could be repaired, it became necessary to beach her and ascertain the depth of her keel and the shape of her bottom; when the tide left she was badly strained, her planks had started, some of her timbers had given way, and she became a total wreck. It was expressly admitted by the defendant that, after the disaster she was incapable of repair, that a total loss of outfits followed the loss of the ship, and that the master acted with prudence in continuing the voyage after the injury from the ice, and in what he did after he reached Panama.

This policy not only insures the ship against the usual perils of the sea, but contains the general clause against "all other losses and misfortunes which shall come to the damage" of the ship, and she was clearly within its protection at the time. When an accident happens in the course of necessary repairs, the ship being upon a railway, or in dock, or hove down upon a beach or by a wharf, it is a peril *ejusdem generis* with those named in the policy. *Ellery* v. *New England Ins. Co.* 8 Pick. 14. *Devaux* v. *J'Anson*, 5 Bing. N. C. 519. The defendant does not seriously controvert this proposition; but contends, that as there is no positive evidence of anything happening when she was upon the beach, adequate and sufficient to produce the catastrophe that

followed, the presumption is that it was the result of **inherent** weakness or internal defect in the ship, and not of any cause which can be included among the perils covered by the policy.

If a ship is lost without any apparent sea damage or accident sufficient to destroy a sound vessel, there is a presumption that it proceeds from inherent weakness or decay. For such loss the insurer is not responsible; and the burden of proof is on the plaintiff, as in other cases, to show that the loss arose from a peril insured against. *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227. *Paddock* v. *Commercial Ins. Co.* 104 Mass. 521, 528.

It therefore becomes necessary to ascertain whether there was sufficient evidence in this case to overcome any presumption of internal weakness or decay, or want of seaworthiness, that may arise from the peculiar circumstances and the result of the accident, and to justify the jury in finding that it was occasioned by a peril within the policy. The plaintiff does not contend that the injury to the cutwater was in any way the cause of the accident, but relies upon that merely to show that it was necessary for the ship to go on to the beach for repairs.

It was admitted at the trial that the ship was seaworthy when she sailed from New Bedford seventeen months before; that is to say, that she was then strong and able to withstand the perils of the sea, " wherever she may go on a whaling voyage," to use the language of the policy, which insured her for the term of four years. " Seaworthiness applies to the intended uses and purposes, to which the vessel is to be applied." *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227, 232. It appears in the evidence that during the previous season, while cruising in the Arctic Ocean, and whaling in the ice, she withstood heavy weather and other perils encountered there, and was perfectly tight until at the close of the season when her cutwater was injured. At the time she received the injury, it was blowing a heavy gale. From that time until she reached San Francisco, the captain testifies that they had " mostly heavy weather but fair winds," and she was not affected by the weather. When he examined her at Panama, to see if her stem could be repaired without employing ship carpenters, no unsoundness, rot or decay was discovered, and the captain then thought her to be in good order, sound and in all respects seaworthy, except the damage to her stem. She was a

deep, sharp ship, drawing nineteen feet of water, and was heeled over at an angle greater than forty degrees when she grounded on the beach. It does not appear that there was any neglect of duty on the part of the master in keeping her in proper and seaworthy condition; on the contrary, immediate steps were taken to repair all visible and ascertained defects. It is unnecessary to detail all the evidence; we call attention to some of it which is most significant.

The fact that she was seaworthy at the inception of the risk, her good conduct at sea preceding the loss, and her apparent soundness when examined at Panama, taken in connection with her model and construction, and the manner in which she was laid down upon the beach, does afford evidence for the consideration of the jury, from which they might properly find that the loss was occasioned by putting her on the beach for the purpose of repair, and not by her inherent weakness. We cannot say that it would be unreasonable for the jury to conclude that she was strained in taking the ground, and her weight thrown upon an unsuitable point. This by no means shows that she was inherently weak, and incapable of enduring the wear and tear of the voyage.

The apparent cause of the loss was her grounding on the beach. Being seaworthy when she started, seventeen months before, and there being no evidence of any change in her condition, except the extent of the injury she received in grounding, it is difficult to see how the jury, upon the evidence, could find that she was lost from any but the apparent and visible cause. It is not necessary that they should determine the precise and exact circumstance or thing which caused the injury, in order to justify such a conclusion. It is sufficient if they find, upon all the evidence, that her loss was occasioned by laying her on the beach, which was a necessary preliminary to repairing her, and a peril covered by the policy.

In *Anderson* v. *Morice*, L. R. 10 C. P. 58, 609, a ship, while at anchor in port during fine weather, suddenly began to leak, and sunk at her anchors. Evidence was given that she was seaworthy; that she had recently been repaired; that she behaved well on previous voyages, and on the voyage to the port where she was lost. There was no evidence given of any actual facts

showing the cause of her loss. And it was held that, while in the absence of other evidence of her condition, the fact of her sinking in smooth water, without apparent cause, would create an irresistible presumption of unseaworthiness; yet when there is other evidence of her condition, the fact of her sinking in smooth water becomes one of several facts, which must all be left to the jury; and, if they conclude on the evidence that the ship was seaworthy, they may find that she was lost by a peril insured against, although they may be unable to ascertain precisely what the peril was. Mr. Justice Brett, who delivered the opinion in the Common Pleas, which, on this point, was confirmed in the Exchequer Chamber, remarks: " If from other facts — such as a large amount of repairs recently done, careful surveys recently made, excellent conduct of the ship up to a time immediately preceding the loss, or otherwise — a jury conclude that the ship was seaworthy at the inception of the risk, then the jury may further find that the loss was occasioned by a peril insured against, though they are unable to ascertain or safely conjecture what it was which caused the ship to sink." In the case at bar, it was admitted she was seaworthy when she started on her voyage. See *Paddock* v. *Franklin Ins. Co.* 11 Pick. 227, 232; *Potter* v. *Suffolk Ins. Co.* 2 Sumn. 197.

The examination of the witness, called by the plaintiff to prove the condition of the ship, as to soundness and strength when she sailed from New Bedford, was objected to by the defendant, and was waived by the plaintiff, at the suggestion of the court, the defendant admitting her seaworthiness. After that the court properly refused, in that stage and aspect of the case, to allow the defendant to cross-examine the witness and put in evidence on that subject matter.

As the verdict is sustained, the case must go, as provided in the report, to an assessor, to determine the amount thereof, allowing salvage of wreck and outfits as they may appear in evidence.                    *Judgment on the verdict.*