# Hillman Transportation Co. *v.* Home Insurance Co., Appellant.

# Hillman Transportation Co. *v.* Insurance Co. of North America, Appellant.

*Insurance—Marine insurance—"Unavoidable dangers of rivers" —Excepted causes—Act of God—Vis inertia—Burden of proof— Evidence—Case for jury—Words and phrases.*

1. A marine insurance policy will be given a liberal construction in favor of the insured.

2. In an action on a policy of marine insurance for loss of a river steamer, where the policy covers "unavoidable dangers of the rivers," and enumerates a number of excepted causes, such as undue loading, and provides that the "vessel shall be run and navigated with ordinary care and skill," and the defense is that the vessel was unduly loaded with coal, causing it to be top-heavy, and that the crew was intoxicated when the boat capsized, and the evidence on these matters is conflicting, the case is for the jury.

3. In such case, plaintiff, after proving the boat was not unduly loaded, that it was properly navigated, and that the accident did not occur from any excepted cause, is not obliged to go further, and prove the actual cause of the accident.

4. The word "unavoidable" means unpreventable by the persons operating the boat with due care and skill. It is not limited to such causes as are known as an act of God.

5. Where a boat with a shallow draught and a high pilot house, has a tendency, like other boats of its class, to capsize, and such tendency is not within the exceptions of the policy, it is one of the "unavoidable dangers of the rivers" within the meaning of the policy.

Argued October 12, 1920. Appeals, Nos. 102 and 103, by defendants, from judgments of C. P. Allegheny Co., April T., 1919, Nos. 1902 and 1903, on verdicts for plaintiffs in cases of Hillman Transportation Co. v. Home Insurance Co. of New York and Hillman Transportation Co. v. Insurance Co. of North America. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Assumpsit on policies of marine insurance. Before SWEARINGEN, J.

The cases were tried together.

The opinion of the Supreme Court states the facts.

Verdict and judgment (No. 1902) for plaintiff and against Home Insurance Co. for $2,152, and (No. 1903) against Insurance Co. of North America for $23,683. Defendants appealed.

*Error assigned,* inter alia, was refusal of defendants' motion for judgment n. o. v.

*Francis S. Laws,* of *Lewis, Adler & Laws,* with him *Calvert, Thompson & Wilson,* for appellants.—Unavoidable dangers of the rivers has been defined to be dangers which arise from the action of the wind and waves and from other inevitable causes directly connected with the navigation of rivers: Hays v. Kennedy, 41 Pa. 378; "G. R. Booth," 171 U. S. 450.

Appellee must bring the loss within a peril insured against: McKern v. Assurance Assn., 167 Pac. R. 795; Long Dock Mills Co. v. Ins. Co., 116 Fed. 886; Soelberg v. Western Assurance Co., 119 Fed. 23.

*M. W. Acheson, Jr.,* with him *Charles Alvin Jones* and *Sterrett & Acheson,* for appellee.—Having shown a loss from an unavoidable danger of the river not due to the excepted causes, and hence a loss from one of the very risks insured against, plaintiff made out its case and was not otherwise concerned with the precise cause of the disaster, it being well settled that marine underwriters are liable for unascertainable causes: Western Ins. Co. v. Cropper, 32 Pa. 351; Hays v. Kennedy, 41 Pa. 378; Jones v. Western Assurance Co., 198 Pa. 206; Paddock, etc., Co. v. Ins. Co., 118 Mo. App. 85; Louisville Underwriters v. Pence, 93 Ky. 96.

OPINION BY MR. JUSTICE FRAZER, December 31, 1920:

Plaintiff owned and operated a tow boat insured by the Insurance Company of North America and the Home Insurance Company in separate policies and different amounts, but containing identical provisions with respect to the risk covered. The boat capsized while navigating the Monongahela river resulting in a total loss and actions were brought to recover the amounts of the policies. The two cases were, by agreement, tried together and resulted in a verdict for plaintiff in the full amount of both policies. The assignments of error complain of the refusal of the trial judge to give binding instructions for defendants and the subsequent refusal of the court to enter judgment for defendants non obstante veredicto.

The material parts of the policies are as follows: "The perils which this company assumes under this policy, are the unavoidable dangers of the rivers......excepting all perils, losses or misfortunes arising from or caused by the gross negligence, recklessness, or willful misconduct of the owner, master, officers or crew of the said vessel,......or from any other legally excluded causes,......or any loss or damage arising from or occasioned by said vessel being unduly laden," etc., together with numerous other excepted causes not material

here. Under the heading "warranty of the assured," the policies further set forth: "It is warranted by the assured, that the said vessel is and shall be at all times during the continuance of this policy, tight and sound, sufficiently found in tackle and appurtenances thereto, competently provided with Master, Officers and Crew and all other things and means necessary for the safe employment of said vessel; and that said vessel shall be run and navigated with ordinary care and skill."

At the time of the accident the boat was running "light," that is without tow of other vessels, and was proceeding up stream between Dravosburg and Isabelle Mine. At a bend of the river the vessel suddenly capsized, turning bottom upward. At this time it was running at slow speed in the regular channel with practically no wind and little current. The captain testified he was unable to fix the cause of the accident, although there is evidence in the case, hereafter referred to, which in a manner accounts for the boat's unexpected behavior.

The theory relied upon by plaintiff for recovery was that the loss resulted from the unavoidable dangers of the river and not from any of the excepted causes mentioned in the policy. In support of this theory, evidence was offered to prove the boat was in sound condition, duly laden, properly manned and operated and did not capsize by reason of one or more of the excepted causes. On this testimony, plaintiff claims a right to recover without showing the exact cause of the disaster. The defense was based on two grounds: first, that the vessel was improperly laden by reason of an excess amount of coal stored on the upper deck, making it top-heavy, and, second, that the boat was not operated with proper care and skill, the crew being intoxicated at the time the accident happened. The evidence was conflicting on these matters and the trial judge properly submitted them to the jury with the instruction that "if you should find, from the weight of the testimony given you, that this accident that happened to the plaintiff's tow boat was due

to one of the unavoidable dangers of the river Monongahela, that the boat was not unduly laden and that the crew, that is, the officers and men, were navigating her with ordinary care and skill under the circumstances, you should find a verdict for the plaintiff in both of these actions. But if you find the cause of the accident was not one of the unavoidable dangers of the river or that the boat was unduly laden, or that the officers and the crew were guilty of gross misconduct in their management of the boat, you should find a verdict in favor of the defendants in both cases."

The argument of defendants is, it was not sufficient for plaintiff to prove the vessel was in good repair, duly laden, properly manned and operated and that the accident did not occur from any of the excepted causes but plaintiff must go further and show the actual cause of the accident so that it might be determined whether such cause was one of the unavoidable dangers of the river. With respect to this the trial judge charged: "We say to you, as a matter of law, that, because the cause of the accident could not be ascertained, the plaintiff is not prevented from obtaining a recovery. You observe that both of the defendants insured against the unavoidable dangers of rivers; and, therefore, it is that thing against which the defendants agreed to indemnify the plaintiff, and, as we said to you before, because the cause of the accident cannot be ascertained is not, of itself, sufficient to prevent a recovery." The trial judge also affirmed a point to the effect that the burden of proving that the boat capsized by reason of a peril insured against was on plaintiff and also that, unless the jury found the cause was one of the unavoidable dangers of the river, there could be no recovery; and defined "unavoidable dangers" of the river as meaning "that an accident happened notwithstanding the boat was operated with reasonable care and skill by those in charge, who were ordinarily competent for their duties." The verdict of the jury established that the boat was not unduly laden and was prop-

erly manned and operated. Accordingly, it only remains to determine whether plaintiff's failure to establish definitely the cause of the accident defeated its right to recover.

In the first place, a marine insurance policy, as in the case of other insurance policies, will be given a liberal construction in favor of the insured and all doubts resolved in his favor: Western Ins. Co. v. Cropper, 32 Pa. 351; consequently the risks insured against in this case are the "unavoidable dangers" of the river, with certain enumerated exceptions; any accident occurring during the operation of the boat, and shown not to fall within the excepted causes, must be within the terms of the policy, if, by a reasonable construction it can be held to be an unavoidable danger of the river.

The word "unavoidable" has been held to mean unpreventable by the persons operating the boat with due care and skill: Hays v. Kennedy, 41 Pa. 378, 386. That the present accident was unavoidable within the meaning of this definition has been established by the verdict of the jury. That it was a "danger of the river" seems equally clear from the general rule that such words include the same character of losses as are covered by the expression "perils of the sea" which are held to embrace all kinds of marine casualties, such as shipwrecks, foundering, stranding, collision, etc.: 26 Cyc. 652; Gordon v. Little, 8 S. & R. 533, 562. This case is free from action of the elements, or other act of God, causing or contributing to the overturning of the vessel. The term "unavoidable accident," however, is not limited to such causes as are within the common law meaning of the expression "act of God," which confines it to occurrences happening without human intervention and notwithstanding human effort to prevent it, but includes those in which human agencies concur. "It is impossible, therefore, to define inevitable accidents by excluding the element of the intervention of man; for this element itself needs definition. In all the instances we have

given, the accident may be legally inevitable, even though there be the intervention of man having some influence in it": Hays v. Kennedy, supra. In that case, which was an action against the carrier for loss of goods resulting from the sinking of a boat in a collision occurring without fault of the crew of the carrier, this court held such loss was within a clause in the bill of lading excepting the carrier from liability for unavoidable dangers of the river. It is also said in that case (page 383): "Nobody expects a carrier to warrant against such accidents; this is the business of the insurers. Nobody doubts this meaning of perils of the sea, and inevitable accidents, in insurance contracts. Why should it be different in carriers' contracts?" The above principles are in accord with a recent definition of perils of the sea as "something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety": In re Rosalie, 264 Fed. 285, 288. We conclude that, notwithstanding the absence of extraneous known causes for the capsizing of the boat and that there necessarily existed human intervention in its operation, the accident was one resulting from an unavoidable danger of the river, in absence of proof to the contrary.

Plaintiff was charged with the duty of establishing a loss within the terms of the policy: Baker v. Ins. Co., 12 Gray 603; Berwind v. Greenwich Ins. Co., 53 N. Y. Superior Ct. 102; but not to produce proof of the particular cause of the capsizing of the vessel. To cast this latter burden upon it might have defeated the very object in taking out the insurance. It was sufficient to show a probable or even a possible cause (Western Ins. v. Tobin, 32 Ohio State 77, 92) and to exclude such causes as plaintiff expressly warranted not to exist, which was done by showing the vessel was seaworthy, properly manned and operated with reasonable care and skill. The law applicable in such case was well summarized in Marcy v. Sun Ins. Co., 14 La. An. 264, as fol-

lows (page 265): "It is true that the burden of proof is upon the plaintiff to make out his case; but the proper rule of evidence is that, when a party insures against perils, all of which cannot be seen or known, the loss shall fall upon the insured when it proceeds from a cause not known, or that might have existed, but which is not satisfactorily proved, on the presumption that the vessel was not seaworthy. But if this presumption be rebutted and it be shown that the vessel was staunch, strong and in a seaworthy condition, and there is no suggestion and proof of fraud, then the plaintiff is not bound to prove the identical cause of the loss, but may show a possible cause. For, as the defendant undertook to insure against perils below the water as well as above, it was then well known to the contracting parties that a loss might occur which could not be explained, and all that the insured could do would be to prove that the vessel was seaworthy." This language was quoted with approval in Paddock-Hawley Iron Co. v. Ins. Co., 118 Mo. Ap. 85, where a barge, while being loaded, suddenly sprung a leak and sank and there being proof of the seaworthiness of the vessel the court said (page 101): "In the absence of any evidence of any cause for its loss, the presumption is that the loss was occasioned by a peril of the river, and there is no more reason for requiring the plaintiff to prove the exact peril which caused the loss than there would be to require the plaintiff in a suit on a policy insuring a dwelling house against loss by fire to prove the exact origin of the fire." To the same general effect is Moores v. Louisville Underwriters, 14 Fed. 226; Swift v. Ins. Co., 122 Mass. 573; Snethen v. Memphis Ins. Co., 3 La. An. 474; Anderson v. Morice, 10 C. P. L. R. 58.

While it was unnecessary, under the circumstances of this case, for plaintiff to prove definitely the cause of the accident, there is, in fact, evidence in the record from which such cause may readily be inferred. The boat, like other similar craft, was built for a shallow draught of three feet with the top of the pilot house twenty-two

feet above the water. Although a top-heavy construction, such construction apparently was rendered necessary for the purpose of navigating shallow water; however this may be, there is no contention that the boat was of improper construction or that it differed materially from other craft used for similar purposes. According to the testimony, boats so constructed are liable to roll and turn over, especially when running light. This tendency to capsize, even with careful handling, appears to have been the cause of the accident, and, being incident to all boats of the character of the one in question and not having been one of the exceptions mentioned, was one of the unavoidable dangers of a river within the meaning of the clause in the policies.

The judgment of the court below is affirmed.