**CRAIN BROS., Inc., a corporation, Libellant,**

v.

**HARTFORD FIRE INSURANCE COMPANY, a corporation, Respondent.**

**No. 275.**

United States District Court
W. D. Pennsylvania.

March 28, 1957.

Campbell, Houck & Thomas, Pittsburgh, Pa., for libellant.

Dickie, McCamey, Chilcote, Reif & Robinson, Pittsburgh, Pa., for respondent.

WILLSON, District Judge.

This suit is an aftermath of the litigation in this court at Nos. 217 and 218 in Admiralty, affirmed by the Court of Appeals, Pittsburgh Consol. Coal Co. v. Harrison Const. Co., 3 Cir., 223 F.2d 260. The issue in this case is whether libellant has coverage under a policy of insurance issued by respondent. There is no factual dispute except for the issue as to whether libellant gave respondent timely notice as is required under the insurance policy. All other facts have

been stipulated. On the issue of timely notice, in paragraph 10, the court makes its own findings:

### Findings of Fact.

1. Crain Bros., Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, maintaining a principal place of business at 1836 Franklin Street in the City of Pittsburgh, Pennsylvania.

2. Hartford Fire Insurance Company is a corporation organized and existing under and by virtue of the laws of the State of Connecticut, and duly authorized to transact business in the Commonwealth of Pennsylvania, and maintaining a place of business in the City of Pittsburgh, Pennsylvania.

3. On or about January 16, 1950, Hartford Fire Insurance Company, in consideration of a premium paid to it, issued and delivered to Crain Bros., Inc., its policy of insurance No. RPI 8301, a copy of which is attached to the stipulation of facts, covering the period from noon, January 16, 1950, until noon, January 16, 1951.

4. The endorsement schedule to policy No. RPI 8301 provided for coverage with respect to the M. V. Clipper, a vessel belonging to Crain Bros., Inc., of $50,000, less $100 deductible from any one accident or occurrence.

5. On November 25, 1950, while said insurance policy was in full force and effect, the American Barge Line Company entered into a contract of towage with Crain Bros., Inc., whereby Crain Bros., Inc. was to tow two loaded barges from the Duquesne Wharf, in Pittsburgh, up the Allegheny River, to the Fifty-first Street Landing of the Harrison Construction Company.

6. Barges H-768 and PC-408 were towed by the M. V. Clipper to the landing on November 25, 1950, and moored to the outside of an empty barge which was itself moored to the landing and had its inside head aground on shore.

7. Due to an extremely heavy snowfall, the Allegheny River rose and, during the morning of November 27, 1950, some thirty-four to thirty-six hours after the barges were moored, the empty barge became afloat, snapping the cables and setting all three barges adrift down the river.

8. The two loaded barges collided with the pier of the Ninth Street bridge and sank, resulting in a complete loss of the barges and their cargo of pig iron; the empty barge was recovered.

9. In a suit instituted in the United States District Court for the Western District of Pennsylvania brought by the American Barge Line Company and the Pittsburgh Consolidation Coal Company against the Harrison Construction Company and Crain Bros., Inc., in personam, and the M. V. Clipper in rem, at Nos. 217 and 218 in Admiralty, Joseph P. Willson, D. J., entered judgment against Crain Bros., Inc. and the M. V. Clipper for the negligent mooring of the barges, in an amount totaling $53,745.86, all of which, plus record costs, were paid in full by Crain Bros., Inc.

10. The accident occurred on November 27, 1950, and libellant knew of the loss of the barges shortly thereafter. However, libellant did not notify respondent of the destruction of the barges or of any possible claim arising under the policy until within thirty days of January 24, 1952, which was the date of service of the libel upon libellant by American Barge Line Company and the Pittsburgh Consolidation Coal Company, both libellants in the Admiralty actions Nos. 217 and 218.

11. Hartford Fire Insurance Company defended in the action against Crain Bros., Inc., with a reservation of rights agreement entered into with the insured.

12. It is further stipulated and agreed that the Findings of Fact and Conclusions as found by the District Court of the United States for the Western District of Pennsylvania, at Nos. 217 and 218 in Admiralty, and affirmed by the United States Court of Appeals for the Third Circuit, are included herein.

## Discussion.

The stipulated facts include by reference the provisions of insurance policy No. RPI–8301, which provides, inter alia:

"(a) Loss or damage in respect of any other ship or boat, or in respect of any goods, merchandise, freight, or other things or interests whatsoever on board such other ship or boat, caused proximately or otherwise by the insured vessel, in so far as the same is not covered by the Running Down Clause in or attached to the policies on Hull and Machinery.

"(b) Loss or damage to any goods, merchandise, freight, or other things whatsoever, other than as aforesaid, whether on board said vessel or not."

and an exclusionary clause reading:

"Notwithstanding the Foregoing, No Liability To Attach To This Company: * * * (3) For any loss, damage or claim arising out of or having relation to the towage of any other ship or vessel, whether under agreement or not, but this clause shall not apply to ordinary salvage services, not contracted for, rendered in an emergency to a ship or vessel in distress, nor to damage to fixed objects nor to loss of life or personal injury."

Libellant asserts in this suit that respondent is liable to indemnify it in the amount it paid as the result of a final judgment against it in the two suits mentioned. Respondent contends that the policy provided no coverage for the accident on November 27, 1950, because the Court of Appeals found negligence on the part of the towboat's crew in tying up the barges and that respondent's claim in this case is one " * * * *arising out of or having relation to the towage of any other ship or vessel, whether under agreement or not,* * * * *"* (Emphasis supplied.)

Libellant says that it is only if libellant's loss was suffered as the result of "towage" that the respondent can escape liability. The libellant poses the problem in the form of a question, that is, it says: "Does a loss resulting from the negligent mooring of a barge also arise from 'towage'?" Libellant asserts that all of the definitions of towage have at least one thing in common and that is that towage envisages a vessel in motion, that is, movement under motive power supplied by a tug. It says that such is the reasonable unstrained meaning to be given to the word in this policy. It says that the insured has excluded from its duty of protection and indemnity all losses or damages arising out of or having relation to the movement of any other craft by the insured. It says that once movement has ended, the exclusion ceases to be in effect. Libellant further asserts that while a tug's duty to its tow may continue after the tow is tied up, the towage itself ceases when the tug and tow are separated. Libellant calls attention to the factual situation in the preceding cases, that is, that its liability was the result of its negligent "tying up of the barges," and occurred some thirty-four or more hours after the movement by the insured had ended.

Respondent refers to Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 349, 76 L.Ed. 699, wherein Mr. Justice Butler held:

"The supplying of power by a vessel, usually one propelled by steam, to tow or draw another is towage."

It bears repetition to note that libellant's tug "Clipper" on November 25, 1950 towed two barges to the landing and moored them to the outside of an empty barge which was itself moored to the landing and had its inside head aground on shore. Due to an extremely heavy snowfall, the Allegheny River rose and during the morning of November 27, some thirty-four to thirty-six hours later, the empty barge became afloat, snapping all the cables and setting the barges afloat down the river.

In the opinion affirming this court, the Court of Appeals said [223 F.2d 261]:

"As to the first issue there was ample evidence to support the finding of the court below that the towboat's crew was negligent in tying up the barges."

Thus it is apparent that libellant, to recover under this insurance contract, must persuade the court that the exclusionary clause only has reference to liability arising by breach of contract, and that it is not to be applied as to liability sounding in tort. In its supplemental brief, libellant states its position, as follows:

"While a tug is under a duty to its tow to moor it properly, 86 C.J.S., Towage, § 63 c (1954), this is a duty imposed, not as a result of the towage contract, but a duty imposed by law. Damages to the tow are recoverable only upon a showing of negligence, and hence sound in tort and not in contract. Stevens v. The White City, 1932, 285 U.S. 195 [52 S.Ct. 347, 76 L.Ed. 699]; Foss Launch & Tug Co. v. The Kukui, [D.C.], N.D.Calif.1955, 130 F.Supp. 180; The Steamboat Brooklyn, 2 Benedict's Dist.Ct.Repts. 547 (D.N.Y.1868). Since the libelant's duty to its tow arose out of law, and not out of the towage contract, the exclusionary clause is not applicable."

However, it seems to this court that the exclusionary language is clear. It says, " * * * arising out of or having relation to the towage of any other ship or vessel, * * *." etc. The language in the policy simply excludes coverage for any loss or damage arising out of or having relation to towage. This is a marine policy and as this court understands it, towage in this instance means the "delivery of the barge at a berth apparently safe and in a position apparently secure." See O'Boyle v. City of New York, D.C., 37 F.2d 934; and Wilmington Transp. Co. v. The Old Kensington, D.C., 39 F. 496.

A similar issue was decided adversely to libellant's contention in Bronx Towing Line v. Continental Ins. Co., D.C.,

108 F.Supp. 298. In that case it was conceded that the tug gave the barge a bad berth. Judge Kennedy said at page 300:

" * * * It would, I think, be absurd to say that the Tug Syndicate's policy has spent its force the minute the 'tow' is moored. If the tug has set up a chain of causation which results in damage even after she has physically left the berth, I suppose no one who has bought and paid for this type of insurance would have any patience with a claim by the issuing company that there is no coverage except during actual towage—I am sure the libelant, if it had had such insurance, would reject that view. To me the intention of the tower's liability policy is perfectly clear, and I believe the issuing company would have been liable to the libelant under the circumstances which the stipulation discloses. It is unnecessary for me to say anything concerning the effect on the policy of time-lapse after the tow has been moored. The question, I should think, is always one of causation and naturally in most instances a long time-lapse would have the effect of weakening the claim of causation and exonerating the tower."

One of the cases cited by libellant in support of its contention is Foss Launch & Tug Co. v. The Kukui, D.C., 130 F.Supp. 180, 182. In that case Judge Murphy says:

"It is fundamental that a towage contract does not constitute a bailment. Stevens v. The White City, 1932, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699. There is no guarantee that the towed vessel will be delivered. The remedy for failure to deliver must sound in tort."

Judge Murphy's decision is of no help to libellant. To restrict the exclusionary clause to contractual liability only is to read something into the policy that is not written in it. It is certainly correct

to say, as the Supreme Court of Pennsylvania held in Hillman Transportation Co. v. Home Ins. Co., 268 Pa. 547, 112 A. 108, 109 that:

> "[A] marine insurance policy, as in the case of other insurance policies, will be given a liberal construction in favor of the insured and all doubts resolved in his favor * * *."

But it is to be remembered on the other hand, that there is an equally forceful principle in contract law. Respondent cites this principle as found in Skelly v. Fidelity & Gas Co., 313 Pa. 202, 169 A. 78, 79, where it is said:

> "* * * Where there is no ambiguity, the court must construe the language of a policy in accordance with the plain, ordinary meaning of its terms."

██ In the opinion of this court in the instant case, the exclusionary clause is in plain language. It is not ambiguous. It must be held that the damage to the barges arose out of or had relation to the towage of the barges by libellants tugboat "Clipper." That the tugboat's crew was negligent in tying up the barges has been decided heretofore. The exclusionary clause is effective in the instant case. The issue of timely notice is not decided

### Conclusions of Law.

1. The issues presented in this case are within the admiralty and maritime jurisdiction of the court.

2. Under the facts as hereinbefore separately stated, this court concludes as a matter of law that defendant Hartford Fire Insurance Company, a corporation, is not liable to Crain Bros., Inc., a corporation, under policy of insurance No. RPI–8301.

3. The libel filed by Crain Bros., Inc., a corporation, against Hartford Fire Insurance Company, a corporation, will be dismissed.